In the Matter of MURRAY B. ROSENBERG et al., Petitioners, against BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Respondents.

Supreme Court, Special Term, Kings County, October 11, 1949.

*Joseph Goldstein* for petitioners.

*John P. McGrath, Corporation Counsel (Michael A. Castaldi* of counsel), for respondents.

*R. Lawrence Siegel* for Committee on Academic Freedom of the American Civil Liberties Union and another, *amicus curiæ.*

DI GIOVANNA, J. This is an application pursuant to article 78 of the Civil Practice Act for review of a determination permitting and allowing the use of " Oliver Twist " by Charles Dickens and " The Merchant of Venice " by William Shakespeare, in the secondary schools of the city of New York as approved reading and study material.

In exercising its duty under subdivision 3 of section 2516 of the Education Law, the respondents select textbooks regarded as preferable for instruction of pupils in English and English

literature. These two books were selected together with many others.

Petitioner charges that the two books are objectionable because they tend to engender hatred of the Jew as a person and as a race.

It is not contended herein that the respondents, collectively or individually, approved the books because of antireligious or antiracial inclinations. As a matter of fact, because of public discussion concerning books of this nature, respondents have expressly required teachers to explain to pupils that the characters described therein are not typical of any nation or race, including persons of the Jewish faith, and are not intended and are not to be regarded as reflecting discredit on any race or national group.

Except where a book has been maliciously written for the apparent purpose of promoting and fomenting a bigoted and intolerant hatred against a particular racial or religious group, public interest in a free and democratic society does not warrant or encourage the suppression of any book at the whim of any unduly sensitive person or group of persons, merely because a character described in such book as belonging to a particular race or religion is portrayed in a derogatory or offensive manner. The necessity for the suppression of such a book must clearly depend upon the intent and motive which has actuated the author in making such a portrayal.

Literary value of a work of fiction does not depend upon the religious or national origin of the characters portrayed therein. If evaluation of any literary work is permitted to be based upon a requirement that each book be free from derogatory reference to any religion, race, country, nation or personality, endless litigation respecting many books would probably ensue, dependent upon sensibilities and views of the person suing.

Public education and instruction in the home will remove religious and racial intolerance more effectively than censorship and suppression of literary works which have been accepted as works of art and which are not per se propaganda against or for any race, religion or group. Removal from schools of these books will contribute nothing toward the diminution of antireligious feeling; as a matter of fact, removal may lead to misguided reading and unwarranted inferences by the unguided pupil.

Educational institutions are concerned with the development of free inquiry and learning. The administrative officers must

be free to guide teachers and pupils toward that goal. Their discretion must not be interfered with in the absence of proof of actual malevolent intent. Interference by the court will result in suppression of the intended purpose of aiding those seeking education.

.The court therefore finds that respondents, in exercising their judgment, did not abuse their discretion; that they acted in good faith without malice or prejudice and in the best interests of the school system entrusted to their care and control, and, therefore, that no substantial reason exists which compels the suppression of the two books under consideration. Motion for review is denied and the petition is dismissed.